| | |
|---|---|
| **BERNICE F. BAMBULIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2256** |
| **PROTECTIVE LIFE INSURANCE CO, et al** | **SECTION B(5)** |

### <u>ORDER & REASONS</u>

Before the Court is Defendant Protective Life Insurance Company's ("Protective Life") Motion for Summary Judgment (Rec. Doc. No. 26) pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiff Bernice F. Bambulis' Memorandum in Opposition to Protective Life Insurance Company's Motion for Summary Judgment (Rec. Doc. No. 30). Defendant then filed a sur-reply thereto. (Rec. Doc. No. 33).

For the reasons pronounced below, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 26) be **GRANTED.**

<u>Causes of Action and Facts of Case</u>:

This action arose over the termination of a life insurance policy and an alleged misunderstanding over the tax consequences of that closure. On June 20, 1988, Kemper Investors Life Insurance Company ("Kemper") issued a single-premium life insurance policy to Bambulis. (Rec. Doc. No. 26-1, at 1). The policy was issued for a premium of $100,000.000 and Kemper later

assigned its rights under the policy to Protective Life (Id.).[1]
The policy provided that upon written request, the policy would
be "surrendered," meaning terminated, and a "surrender value"
would distributed to the plaintiff. (Id. at 2; Rec. Doc. No. 26-
3, at 13). On August 24, 2006, Kemper received a letter from the
Plaintiff asking Kemper to close her account. (Rec. Doc. No. 26-
4, at 1). On September 6, 2006, Kemper responded with a letter
to the Plaintiff, informing her that the surrender of the policy
would result in a realization of a $182,972.93 taxable gain and
asking her whether she wished Kemper to withhold any amount for
taxes. (Rec. Doc. No. 26-5, at 1). The Plaintiff did not opt
into such withholding, nor did she go through with surrendering
the policy at that time. (Rec. Doc. No. 30, at 2). Subsequently,
on June 29, 2010, Bambulis sent Kemper a loan surrender form.
(Rec. Doc. No. 26-6, at 2-3). In Section 2 of the Surrender
Form, entitled "Total Surrender," the Plaintiff checked the box
next to the following language: "I hereby SURRENDER my
contract/certificate." (Id.). Section 3 of the Surrender Form
informed the Plaintiff that the surrender may be subject to
federal and state taxes and asked her whether she would like
taxes withheld. (Id. at 3). The Plaintiff checked a box

---

[1]Plaintiff filed and the Court granted a motion to dismiss Defendant Kemper
Investors Life Insurance from the action because Protective Life Insurance
Company agreed to accept whatever liability Kemper had after Kemper assigned
its rights under the policy to Protective Life. (See Rec. Doc. Nos. 16, 17).
References to Kemper in the pleadings or in this Court's opinion all refer to
Protective Life.

indicating that she did not want income tax withheld. (Id.). The Plaintiff signed the Surrender Form next to language that read "your signature certifies that the information provided is complete and accurate. You also understand that the Company will process this request according to the information provided." (Id.). Along with the Surrender Form, Plaintiff enclosed a letter to Kemper, indicating her belief that no tax should be owed for the surrender of the Policy because the Policy was purchased with the proceeds of a 401(k). (Id. at 1). On June 29, 2010, the Surrender form was rejected due to certain errors in the form. (Rec. Doc. No. 30, at 2). On July 23, 2010, the plaintiff submitted a new signed Surrender Form: she checked boxes indicating that she did not want income tax withheld and that she wished to surrender her contract. (Id. at 3; Rec. Doc. No. 26-7, at 2-3). Kemper then terminated the policy. (Rec. Doc. No. 26-1, at 3). On July 21, 2011, Plaintiff made a formal demand on Protective Life, seeking reinstatement of the policy. (Rec. Doc. No. 26-2, at 4). The demand letter alleged that upon surrender of the policy, the plaintiff was deemed to have realized a taxable gain, which she alleges amounted to $221,661.43. (Id.). The letter further alleges that, as a result of the realized gain, the plaintiff incurred federal income tax liability in the amount of $77,652.00 and Louisiana state income tax liability in the amount of $10,275.00. (Id.). Protective

Life refused to reinstate the policy. (Id.). The Plaintiff's original Petition was filed in the 22nd Judicial District for the Parish of St.Tammany, Louisiana. (Id.). Protective Life then removed the action to federal court on September 8, 2011, pursuant to 28 U.S.C. § 1441(a) based on diversity jurisdiction. (Rec. Doc. No. 1).

## **Law and Analysis**

A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*.

4

Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).

B. <u>LUPTA Claims</u>

Bambulis brings claims against Defendant, an insurance company, under LUPTA and characterizes the Defendant's failure to inform her of the potential tax consequences of surrender as an "unfair trade practice." (Rec. Doc. No. 30, at 15). Under LSA-R.S. 51:1406(1), LUPTA does not apply to "actions or transactions subject to the jurisdiction of the...insurance commissioner." Although the Fifth Circuit has held that 1406(1) does not create jurisdiction under the insurance commissioner, *Lamarque v. Massachusetts Indemnity & Life Insurance Company,* 794 F.2d 197, 198 (5th Cir. 1986), the majority of courts have ruled otherwise. *See Travelers Indem. Co. v. Powell Ins., Co.*, Civ. No.95-4188, 1996 WL 578030, at *4 (E.D.La. Oct. 4, 1996)("since an action for unfair trade practices against an insurance company falls within the jurisdiction of the insurance commissioner, it is exempt from LUPT[A] pursuant to LSA-R.S. 51:1406"); *Alarcon v. Aetna Casualty and Surety Company*, 88-CA-487 (La.App.3 Cir. 1/18/89), 538 So.2d 696 (no private cause of action against insurance companies under LUPTA); *Comeaux v. Pennsylvania General Insurance Co.*, 85-826 (La.App.3 Cir. 6/25/86), 490 So.2d 1191, 1193 (same); *West v. Fireman's Fund*

5

*Ins. Co.*, 683 F.Supp. 156-57 (M.D.La. 1988)(recognizing *Larmarque* and explicitly rejecting it). Furthermore, LSA-R.S. 22:2 provides that "[i]t shall be the duty of the commissioner of insurance to administer the provisions of [the insurance] Code" and the insurance code contains specific provisions, *see* La.R.S. 22-1211, *et seq.*, regarding the unfair trade practices of insurance companies. Thus, Plaintiff's claims under LUPTA must be dismissed.

C. <u>Attorney Fees</u>

Under LSA-R.S. 51:1409, reasonable attorney fees may be awarded to the defendant in a case brought under LUPTA "[u]pon a finding by the court that an action under this section was groundless and brought in bad faith or for the purposes of harassment." "This provision is penal in nature and is subject to reasonably strict construction." *Double-Eight Oil and Gas L.L.C. v. Caruthurs Producing Co., Inc.*, 41,451-CA (La.App.2 Cir. 11/20/06), 942 So.2d 1279, 1286. Defendant's only support for its contention that Plaintiff brought LUPTA claims in bad faith is that Defendant had previously informed Plaintiff that LUPTA was inapplicable. (Rec. Doc. No. 26-11, at 6). Plaintiff's failure to take the Defendant at its word does not prove bad faith. The Court will not award attorney fees to Defendant Protective Life under LSA-R.S. 51:1409(A).

D. <u>LSA-R.S. 22:1969, *et seq.*</u>

LSA-R.S. 22:1968 states that "[w]henever the commissioner shall have reason to believe that any person has been engaged or is engaging in this state in any unfair trade practice...the commissioner shall issue a notice of wrongful conduct to said person....describing the unfair trade practice and citing the law which is deemed by the commissioner to be violated." LSA-R.S. 22:1969, cited by the Plaintiff, follows the above-captioned provision and enumerates penalties for failure to respond to the insurance commissioner's notice. The penalties do not apply independent of such notice. The Insurance Commissioner has not sent any notice to Kemper or Protective (Rec. Doc. No. 26-11, at 6) and thus the Plaintiff cannot seek a remedy under the cited provisions.

Further, LSA-R.S. 22:1973 involves an insurer's good faith duties. It states that "[a]n insurer...owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." However, various federal courts have held that insurance companies do not owe a duty to beneficiaries of a life insurance policy to advise them of the tax consequences of those policies. *See Metropolitan Life Ins. Co. v. Barretto*, 178 F.Supp.2d 745, 750 (S.D.Tex. 2001)(insurance company had no duty to advise on

tax consequences of life insurance policy to the estate of the insured); *Kessler v. Lincoln Nat. Life Ins. Co.*, 620 F.Supp. 282, 284 (D.D.C. 1985)(absent a duty supported by legal precedent, insurer is not obliged to inform insured about tax law changes which may affect insured's policy).

Plaintiff argues that defendant's inaction in response to her letter explaining her view on the tax consequences associated with the surrender transaction shows bad faith. (Rec. Doc. No. 30, at 15) but cites no authority to support this contention. Given Plaintiff's June 29, 2010 letter to Kemper (See Rec. Doc. No. 26-6, at 1) and the text of the tax withholding section of the Surrender Form, stating that the applicant "may be subject to tax penalties under the estimated tax rules if [her] withholding and estimated tax payments are not sufficient" (Rec. Doc. No. 26-7, at 3), Plaintiff was clearly aware that there may have been an issue as to tax liability. Further, no evidence has been presented that the insurance company sought to mislead Bambulis or induce her to surrender the policy. Thus, failure to inform Bambulis of the tax consequences associated with her decision to surrender the policy does not constitute bad faith. Plaintiff may not seek a remedy under LSA-R.S. 22:1969, *et seq*.

E. <u>Contract Claim</u>

Under Louisiana Law, insurance policies are treated as contracts and thus are interpreted and applied in accordance with the provisions of the Louisiana Civil Code dealing with contracts. *See Travelers Indem. Co.*, 1996 WL 578030, at *2 (citing *Louisiana Ins. Guaranty Ass'n v. Interstate Fire & Casualty Co.*, 93-C-0911 (La. 1/14/94), 630 So.2d 759, 763). Under Louisiana Law, "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code. art. 1906. "A contract is formed by the consent of the parties established through offer and acceptance." La. Civ. Code art. 1927. However, "[c]onsent may be vitiated by error, fraud or duress." La. Civ. Code art. 1948. Plaintiff argues that the surrender of her insurance policy constitutes an extinguishment of obligations within the meaning of La. Civ. Code art. 1906 (Rec. Doc. No. 30, at 7). In support of this contention, Plaintiff points out that the Surrender Value Provisions of the insurance contract at issue state that "[p]ayment of the Surrender Value shall *discharge* the Company from its obligations under this Policy." (Id. at 8; Rec. Doc. No. 26-3, at 13)(emphasis added). The request for surrender and compliance with the request do not constitute offer and acceptance such that a new contract was formed, rather these actions constituted compliance with the original terms of the insurance contract. Defendant was not entitled to refuse

Plaintiff's request. Plaintiff only entered into one contract with Kemper - the initial contract for the insurance policy. Plaintiff does not contend that there was error, fraud or duress in formation of the initial contract. Therefore, Plaintiff's claims under this theory must be dismissed.

Accordingly, for the reasons stated above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. No. 26) be **GRANTED.**

New Orleans, Louisiana this 11th day of December, 2012.

_____

UNITED STATES DISTRICT JUDGE